[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on August 31, 1985 at Seymour, Connecticut. They have resided continuously in this state since that time. There are no minor children issue of the marriage.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §§ 46b-81 and 46b-82 of the Conn. General Statutes in reaching the decisions reflected in the orders that follow.
The parties have been married for approximately 13 years. There are no children issue of this marriage. The plaintiff, however, had two children from a prior marriage who were approximately aged seven and ten years of age when the plaintiff and the defendant married. The parties agreed that the plaintiff should remain at home and care for her young children. The plaintiff did not press for child support and thus the defendant supported the plaintiff's two children throughout the marriage. Both children are over the age of 18 years at this time.
The plaintiff is 41 years of age. She is presently employed as a claims processor earning approximately $24,128.00 per year. The plaintiff has been diagnosed with benign relapsing multiple sclerosis. She has made marked improvements with no relapses and has worked full time since October 1997. At the present time, she takes no medication is able to drive her motor vehicle.
The defendant is 43 years of age. In July 1976, almost ten years prior to his marriage to the plaintiff, the defendant suffered severe and crippling crush injuries to his lower body The defendant was 25 years old at the time. The defendant endured over 40 operative procedures, was hospitalized for ten months and CT Page 8902 was in a nursing home for three years for rehabilitation. He also spent one year in a Stryker frame. The defendant's body is disfigured and he is unable to walk unassisted. The plaintiff was aware of all of the defendant's limitations when she married him in 1985.
As a result of these horrific injuries, the defendant settled his Workmen's Compensation matter such that he receives $2083.33 per month for life with a guarantee of payments for 25 years. The annuity payments will increase at the rate of 4% per year.
The plaintiff's expert placed a value of $1,120,058.00 on the defendant's Workmen's Compensation award.
The defendant has been gainfully employed at Cigna for approximately the past 16 years as a computer analyst and earns approximately $57,000 per year from his employment. The defendant's earnings plus his $45,000 per year Workmen's Compensation award increase his total income to approximately $102,000 per year.
The parties had an active social life together including several trips and vacations outside of the United States.
During the course of the marriage, the defendant was financially helpful to members of the plaintiff's family and he completely supported the plaintiff's two children.
The defendant came into this marriage with his Workmen's Compensation award. It was not acquired during the course of the marriage. The plaintiff made no contribution to its acquisition or preservation nor did the wife do anything to enhance its value. The court does not consider this asset, acquired long before the marriage of the parties, in fashioning an equitable distribution of property.
The Workmen's Compensation award does, however, provide the defendant with a stream of income to be considered when fashioning an award of periodic alimony. The court has given some weight to this income. This stream of income along with the defendant's income from his employment at Cigna, enabled the defendant to provide a comfortable lifestyle for himself, the plaintiff and the plaintiff's two children.
The cases cited by the parties involved Workmen's CT Page 8903 Compensation settlements received during the term of the marriage and for a claim incurred during the marriage.
The defendant, Mr. McKane, in this case incurred substantial injuries, permanency, loss of earnings and pain and suffering in July 1976, long prior to the parties' marriage in August 1985,
The plaintiff brought no assets to this marriage. Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of the marital relationship.
In January 1998, the defendant withdrew $28,000 from a $39,306 bank account to purchase a motor vehicle. He withdrew an additional $4,000. since June 1998.
Just prior to their marriage, the defendant purchased property in Beacon Falls for $74,500. The defendant provided all of the down payment of $34,500. Thereafter, the defendant paid off the mortgage of $40,000. using solely his funds.
In 1992, the Beacon Falls property was sold for $145,000. The net proceeds from this sale were put into the present marital home located at 5 Country Club Drive, Seymour. This martial home was appraised at $275,000. It is subject to a mortgage in the amount of $173,000 and a home equity loan of approximately $4,300. The home equity loan was taken out by the plaintiff for attorney's fees.
The following orders shall enter:
REAL ESTATE
The plaintiff shall quitclaim all her right, title and interest in and to the marital home located at 5 Country Club Drive, Seymour, Connecticut to the defendant. The defendant shall hold the plaintiff harmless from any and all liability with respect to the mortgage, taxes and insurance thereon and the home equity loan.
PROPERTY SETTLEMENT
By way of a lump sum property settlement, the defendant shall pay to the plaintiff the sum of $34,000 (thirty-four thousand dollars). If the parties are unable to agree upon the time frame CT Page 8904 and method of payment, the parties shall return to court for further hearing thereon.
OTHER PROPERTY
 A. The plaintiff shall be entitled to the following: 1. 50% of the defendant's 401(k) plan; with 50% to the defendant; 2. 30% of the defendant's pension ($43,000) by means of a QDRO. The defendant shall be entitled to the remainder of his pension; 3. Her IRA and pension; 4. The 1992 Buick motor vehicle and her clothing, jewelry and personal possessions; and 5. Dining room set with six chairs and hutch.
 B. The defendant shall be entitled to the following, addition to the above; 1. His 1996 Cadillac motor vehicle; 2. The Fleet Bank account balance; 3. His checking and savings accounts; 4. Sofa table (foyer), and his personal possessions including his baseball card collection; 5. The 1959 Cadillac motor vehicle and the 1964 Imperial motor vehicle.
 C. The parties have divided the remainder of the personal property contained in the marital residence as set. forth in Plaintiff's Exhibit J.
ALIMONY
The defendant shall pay to the plaintiff by way of periodic alimony the sum of $350 per week until the death of the plaintiff, the death of the defendant, the remarriage or cohabitation of the plaintiff as defined by statute, or five years from date, whichever event shall first occur. Said term of alimony shall be non-modifiable.
Said alimony shall commence one week after the plaintiff vacates the marital home.
COBRA
The defendant shall make available to the plaintiff his CT Page 8905 medical and dental insurance coverage under COBRA as is available through his employment at Cigna. The defendant shall pay the cost of said COBRA up to $200 per month for a period of 18 months. The plaintiff shall be responsible for any cost over $200 per month and for any unreimbursed or uninsured medical expense.
LIFE INSURANCE
The defendant shall maintain the life insurance policy as is available to him through his place of employment, with the plaintiff named as irrevocable beneficiary thereon, for so long as he has an obligation for alimony. This provision shall be modifiable.
Coppeto, J.